Good morning, Judge. May it please the Court. I'm Dennis Chappabitty, the attorney for the Williams Group who were disenrolled from the Moortown Rancheria. Your Honors, to every person who is a citizen in a federally recognized tribe, that status is sacred, and their existence in the modern day-to-day goes back to a long line of Indian ancestors, not only an actual and real connection between them and their ancestors and the tribe, but also a spiritual relationship with the Great Spirit and their blood relations. What happened here in this action is the Bereavening Affairs very admittedly said that, yes, we had set out, in a very methodical way, to interfere with the membership criteria of the Moortown Rancheria that had a drastic and a very... Counsel? Yes, sir. I thought it was the most, or at least one of the most, fundamental principles of tribal  own membership. They're not bound by the Constitution because they're a separate domestic dependent sovereign. They're not bound by anything. The BIA has no power to determine who's in the tribe and who's out of it. Just totally whatever the tribe wants to do. And if they want to squeeze out some people, perhaps in order to squeeze out some sharers in the tribe, it's totally unjustified that nobody else has any power to do anything about it. I thought that was the law. Judge? What case says it isn't? Judge, you're referring to the Santa Clara Pueblo versus Martinez case. Among others, yes. And very too often federal courts use that case without looking at how that case and its facts are distinguishable from this particular instance. Here you have a federal stipulated judgment in December of 1983 that was entered into the record that controlled the restoration of the Moortown Rancheria. That fact is not apparent in the Santa Clara versus Martinez case. That's one distinguishing factor. Number two, you have the Santa Clara Pueblo case did not have any discussion regarding the IRA, the non-IRA issues. In other words, that act, the Wheeler-Howard Act, guaranteed that the Moortown Rancheria would be assured of its historical governance when the clock was turned back pursuant to the stipulated judgment in the Hardwick case. That is also distinguishing from Martinez versus Santa Clara Pueblo. I take your point, but at the end of the day, isn't what Judge Kleinfeld said quite true, that if we were to hold in your favor, we would basically be saying that tribal sovereignty does not include the ability of a tribe to define its own membership? Judge, the tribe does have that right, and we aren't arguing that the tribe in certain instances has the right to define its own membership, but here we have admitted injection of the United States into the tribe's membership standard and criteria that we're claiming violates the Administrative Procedures Act. And therefore, why isn't that like when France tells California, you should not have a death penalty, and California can say, we hear you, and we don't agree. Judge, I agree with that analogy. However, we're looking at a situation where this case is not a standalone case like the Santa Clara Pueblo versus Martinez. We have the element of a federal court stipulated judgment restoring the tribe, and we also have the intrusion of the Bureau of Indian Affairs into the tribal membership during its restoration process. The Martinez case standing alone would hold that your analogy is correct. However, in this situation, we have factors that were injected in by the tribe that caused severe injury to my clients and their ultimate disenrollment or failure to become properly enrolled in their tribe. And we do want to make a very important point here, Judge. The Wheeler-Howard Act was established by Congress in 1934, and the Wheeler-Howard Act granted certain rights to tribes to become more self-sovereign and more self-determinative. On the other hand, that Act also, as late as 1994, guaranteed all tribes in the nation that they should be able to not fear that Act, even though they rejected it. The record shows below that in 1935, the Moortown Rancheria did indeed reject the terms of the Wheeler-Howard Act, the IRA Act, and therefore, they had every right to maintain their existence as a tribe with a government recognized by the United States. At all points in time prior to termination in 1964 under the California Indian Rancheria Act. Now, what the Bureau of Indian Affairs failed to account for in restoring the Moortown Rancheria was that when the clock went back to one second before the tribe was terminated by the California Indian Rancheria Act, it went back to its original status. And my clients had a right to rely on that to use the standards of the 1915 census list of the Moortown Rancheria, as well as the 1935 voters list, approved list, to vote to accept or reject the IRA. Those were the two major criteria that were used from 1915 until 1968 when it was terminated during 1964, and that stood in history as the only two criteria for membership in the Moortown Rancheria. However, what happened in 19, when the tribes restored pursuant back to the Hardwick case, what happened was the Bureau came in and said, oh, those things are wiped off the table now. You have no right to impose those historical standards to restore your tribe and determine membership and participation in the reorganization. We're going to make you, we're going to determine for you, and those words were aptly used throughout the record, we're going to determine for you what your membership standards will be and they will be consisting of the four original distributees and their lineal descendants and not the original 73 people who were on the 1915 Moortown census roll that had been used for years. What steps did you take to exhaust your tribal remedies? Your Honor, there are no steps to take the tribal remedies. My clients did do various appeals. I represent somewhere up of 40 individual clients, and some of them did make public announcements to the tribe. They did file appeals, and those appeals have been routinely rejected or ignored or just put aside. And needless to say... By the tribal courts? They have no tribal court. What's the governing body that would set it aside? When you're talking about appeals, I don't know what you mean. Are you talking about making an appeal? Yes, a judge in most cases involving membership disputes in this part of the country. Of course, the California tribes are very lacking in tribal court systems, and what happens is the general membership is the general forum where you take these problems and disputes of tribal enrollment or citizenship. And many people have likened that to a very unjust system in and of itself, where you have the general population of the tribe and it's not about people that it had originally rejected, it's going back to the judge jury and the executioner, in effect. Well, in your experience, has the general population, the tribe as a whole, ever granted one of these requests? With regard to my specific clients, no, Judge. I'm not sure about any other people that I don't represent. I'm sorry about that. But another thing here, too, one of the general rules is that federal courts are too willing to not examine and distinguish the Martinez case. They have allowed many tribes to engage in very abusive, very inhumane activity toward their members, and with the tribe expecting that the federal district courts and the federal district court of appeals are not going to do anything but say, okay, this is the first of Santa Clara Pueblo, you're out of here. Now, what federal courts have to do is to look strongly and distinguish the facts in this case with what facts were apparent in the case involving the Santa Clara Pueblo in New Mexico. And what we are arguing, we did it in the brief, is that those factors there are totally different than here. And, again, you have the ingredient, the element of federal action that went over the reservation fence and plopped itself right in the middle of the tribe and caused the damage that we are complaining of that should have been remedied by proper notice and comment under the Administrative Procedures Act. And that's where the Bureau flubbed up, the Bureau of Interest flubbed up. Your time has expired. Thank you. Thank you, Judge. We'll give you a little bit of time for rebuttal. Yes. May it please the Court. Christy Capitan, Assistant U.S. Attorney for the Eastern District of California for the Appalachians. It's the government's position, as expressed in the brief, that there is no waiver of sovereign immunity, and, therefore, the motion to dismiss was properly granted. There isn't a claim. It's a creative way to allege around the sovereign immunity clause that the sovereign immunity of the United States and the tribe, in a case that, as the Court said initially, is merely a membership challenge, which this Court has seen most recently in Lewis v. Norton, in which they held that, again, sovereign immunity applies. If there's other specific questions that the Court would like to address to me on any of the issues that were set forth in the briefs? I don't want to waste the Court's time if there's not. So I guess I would submit it on the record. Judge, on appeal, the standards in which this Court must review the complaint is under a standard that looks at what we allege that that complaint is favorable in its review on motion to dismiss. And in that regard, we would like to hear from the Court whether or not we believe that we sufficiently allege Federal jurisdiction, specifically an act of Congress, the Wheeler-Howard Act, the IRA Act, as well as other Federal regulations, the Administrative Procedures Act, upon which we can say that jurisdiction is present. Thank you. Any other questions? Thank you very much for your arguments. The case, just heard, will be submitted.
judges: Kleinfeld, Thomas, Leighton